UNITED STATES of America,
Plaintiff-Appellee,

v.

Arthur Eugene SHEPHERD,
Defendant-Appellant.

No. 82–1708.

United States Court of Appeals,
Tenth Circuit.

July 18, 1984.

Robert S. Berger, Denver, Colo., for defendant-appellant.

Jim J. Marquez, U.S. Atty., D. Kan., Topeka, Kan., Linda M. Betzer and Edward D. Holmes, Attys., U.S. Dept. of Justice, Kansas City, Mo., for plaintiff-appellee.

Before SETH, Chief Judge, and LOGAN and SEYMOUR, Circuit Judges.

LOGAN, Circuit Judge.

After examining the briefs and the appellate record, this three-judge panel has determined unanimously that oral argument would not be of material assistance in the determination of this appeal. *See* Fed.R. App.P. 34(a); Tenth Cir.R. 10(e). The cause is therefore ordered submitted without oral argument.

Arthur Eugene Shepherd appeals from his convictions for conspiracy to transport an explosive in interstate commerce, a violation of 18 U.S.C. § 371, and transportation of an explosive in interstate commerce, a violation of 18 U.S.C. §§ 844(d) and 2.

The government built its case against defendant on the testimony of Michael Ruffalo, a federally protected witness. Ruffalo testified to the following facts: Carl Civella, a friend of defendant's, instructed defendant and Ruffalo to "throw a scare" into Jack Anderson, the owner of the Red Apple, a private club in Kansas City, Kansas. Civella was angry because Anderson had stranded three women, all of whom worked at the Red Apple, in Las Vegas. One of those women was Antoinette LanFranca, who was dating Civella at the time. Her mother was living with defendant. Civella said he sent LanFranca five hundred dollars in Las Vegas so she could return to Kansas City. After rejecting other methods of frightening Anderson, defendant and Ruffalo made a dynamite bomb in Missouri and took it to Kansas, where they assembled it and used it to blow up Anderson's car.

Ruffalo then testified that on three other occasions he and defendant had planted dynamite bombs, all of which failed to explode. Ruffalo also testified that defendant got the dynamite from Charlie Benedict of Hermitage, Missouri.

Antoinette LanFranca testified that she had been stranded in Las Vegas but that she blamed it on one of Anderson's employees, not on Anderson. She testified that someone she did not know gave her four or five hundred dollars for her return to Kansas City. Jack Anderson testified that he had no reason to think defendant was responsible for the destruction of his car. The parties stipulated that Charlie Benedict would testify that he had never known or had any contact with Ruffalo, that he met defendant once through a friend, Leonard Giaramita, and that he had never sold or given dynamite to defendant.

The government produced evidence that the explosive used to blow up Anderson's car was probably not "nitroglycerin" dynamite, which is the most common kind. It produced evidence that the dynamite used

in two of the other bombings to which Ruffalo testified was nitrostarch dynamite (which apparently does not contain nitroglycerin) that could be traced to the manufacturer, the date, and even the workshift at which it was made, which was the same as that sold to Benedict by a hardware store. The government produced other evidence that tended to corroborate parts of Ruffalo's testimony. However, the only other evidence that mentioned defendant was (1) the testimony of defendant's ex-wife that defendant was familiar with dynamite and had kept some on hand while they were married (apparently the nitroglycerin type); (2) the evidence of the generally close personal relationship between defendant, Ruffalo, and Civella; and (3) the record of calls made from the phone at Leonard Giaramita's residence showing one phone call from that residence to Benedict's phone on January 23, 1976, and another to defendant's phone January 26, 1976. (The bombing in the instant case was May 22, 1978; the other bombings Ruffalo testified to occurred September 18, 1976, December 26, 1976, and June 6, 1981.) Thus, essentially none of the evidence, except Ruffalo's testimony, ties defendant to any of the bombings.

I

■ Defendant argues that the trial court erred in allowing Ruffalo to testify that defendant and Ruffalo had been involved in the three attempted bombings. The trial court admitted the evidence under Fed.R.Evid. 404(b), which provides:

"Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."

In short, under Rule 404(b) evidence of prior criminal acts is admissible if it is relevant to something material other than criminal propensity. The Advisory Committee Note to Rule 404(b) states:

"No mechanical solution [to the issue of admissibility of extrinsic offense evidence] is offered. The determination must be made whether the danger of undue prejudice outweighs the probative value of the evidence in view of the availability of other means of proof and other facts appropriate for making a decision of this kind under Rule 403."

Thus, the courts must balance probative value against prejudice to the defendant under Rule 404(b), as well as under Rule 403, upon which defendant also relies.

The government's principal argument is that Ruffalo's testimony about the prior criminal acts was relevant to prove the identity of the person who bombed Anderson's car because the similarity of the acts suggests a common perpetrator. If we could take as fact that nitrostarch dynamite, an apparently rare type, was used in the bombing charged against defendant, and if we could take as fact that defendant was involved in the other bombings in which nitrostarch dynamite was used, the evidence of the other bombings would be relevant and admissible to show identity, "signature," or modus operandi. *See, e.g., United States v. Mahar,* 519 F.2d 1272 (6th Cir.), *cert. denied,* 423 U.S. 1020, 96 S.Ct. 458, 46 L.Ed.2d 393 (1975), in which an accomplice linked the defendant to the robbery charged, other witnesses linked the defendant to the previous robberies, and the modus operandi suggested a common perpetrator. *See also United States v. Herbst,* 565 F.2d 638 (10th Cir.1977).

This Court has affirmed convictions based upon uncorroborated accomplice testimony. *E.g., United States v. Webb,* 466 F.2d 190 (10th Cir.1972), *cert. denied,* 414 U.S. 1012, 94 S.Ct. 378, 38 L.Ed.2d 250 (1973); *United States v. Birmingham,* 447 F.2d 1313 (10th Cir.1971). However, we have been sufficiently concerned in such cases that we have found plain error requiring reversal if the trial court failed to give a jury instruction that the testimony of accomplices must be carefully scruti-

nized, weighed with great care and received with caution. *United States v. Hill,* 627 F.2d 1052 (10th Cir.1980); *United States v. Owens,* 460 F.2d 268 (10th Cir. 1972).

This Court has approved allowing an accomplice to give uncorroborated testimony about prior crimes in which the accomplice and the defendant were allegedly involved, if the testimony otherwise meets the requirements of Rule 404(b). *E.g., United States v. Parnell,* 581 F.2d 1374, 1383–84 (10th Cir.1978), *cert. denied sub nom. Cox v. United States,* 439 U.S. 1076, 99 S.Ct. 852, 59 L.Ed.2d 44 (1979); *United States v. Waldron,* 568 F.2d 185, 187 (10th Cir.1977), *cert. denied,* 434 U.S. 1080, 98 S.Ct. 1276, 55 L.Ed.2d 788 (1978). However, the instant case is the only one we have seen in which the prosecution depended entirely upon the uncorroborated testimony of an accomplice to prove defendant's involvement in the charged crime and then attempted to utilize the uncorroborated testimony of the same accomplice to show defendant's involvement in prior crimes.

The key question in the case before us, of course, is whether defendant was a participant in the crime. If the jury believes Ruffalo's testimony that he was, then the testimony about prior crimes is unnecessary. If the testimony of the prior crimes is necessary in order to bolster Ruffalo's credibility about defendant's involvement in the crime charged, we face the situation in which Ruffalo's credibility is enhanced by his own testimony. The government argues that the proof of defendant's prior similar acts (through Ruffalo's testimony) substantially corroborates Ruffalo's testimony that defendant was an accomplice in the instant crime. We have problems with this contention.

The government obviously thought that the evidence of the prior crimes was necessary, or at least desirable; it took up approximately half of the trial time with that evidence. On appeal the government argues that it needed to corroborate Ruffalo's testimony because he was a three-time convicted felon and a paid government informant who engaged in illegal activities at the same time he was taking the government's money. Brief of Appellee at 19. We are inclined to agree with the government that Ruffalo's testimony about the prior crimes and the government's evidence corroborating many of the details of the testimony enhanced Ruffalo's believability to the jury. A jury acquitted Carl Civella the week before in a separate trial on the same charge in which we presume such evidence could not be presented. A jury acquitted defendant Shepherd a short time earlier in an arson case built on Ruffalo's testimony as accomplice. The instant case apparently was difficult for the jury. During its deliberations it sent a note to the trial court stating, "We need instruction on a deadlocked jury." The jury returned a conviction only after the trial court gave it a modified *Allen* charge. *See Allen v. United States,* 164 U.S. 492, 17 S.Ct. 154, 41 L.Ed. 528 (1896).

Evidence of prior criminal acts is almost always prejudicial to the defendant. The court here gave repeated but general admonitions that the evidence of prior crimes was introduced only for "the limited purpose of showing identity, guilt, knowledge, intent, opportunity, plan, or scheme, if any." But we think it quite possible that the jury's attention was so diverted by the evidence the government produced corroborating details of Ruffalo's other crime testimony, although not defendant's involvement, that it may have overlooked the fact that Ruffalo's testimony was the only real evidence linking defendant both to the crime charged and to the other crimes.

We conclude that Ruffalo's testimony linking defendant to prior criminal acts added very little probative value to his testimony linking defendant to the charged crime because there was no other evidence to corroborate that link. The evidence of other crimes was prejudicial and fraught with the possibility of diverting the jury's attention from the crucial issue, whether Ruffalo's testimony that defendant was his accomplice was credible. In the circumstances of this case the danger of undue

prejudice outweighed the probative value of the evidence, and we must hold that the trial court abused its discretion in permitting Ruffalo to testify to the prior acts. Moreover, we cannot say the error was harmless. The case must be reversed for a new trial.

## II

Because the case must be remanded, for the instruction of the trial court and the parties we now consider those issues presented in the appeal that may reoccur when the case is retried.

### A

Ruffalo testified about statements made by Carl Civella in several conversations Ruffalo had with defendant and Civella during which Civella instructed Ruffalo and defendant to assault Jack Anderson. Defendant argues that this testimony was not admissible as a statement by a coconspirator during the course and in furtherance of the conspiracy, Fed.R.Evid. 801(d)(2)(E), because there was no independent evidence either that a conspiracy existed or that Civella was a member. *See United States v. Andrews*, 585 F.2d 961 (10th Cir.1978).

■ Ruffalo's testimony that Civella gave him instructions to frighten Anderson was not hearsay. An out-of-court statement is hearsay only if it is offered for its truth. Fed.R.Evid. 801(c); *United States v. Webster*, 649 F.2d 346, 349 (5th Cir.1981). An order or instruction is, by its nature, neither true nor false and thus cannot be offered for its truth. *United States v. Keane*, 522 F.2d 534, 558 (7th Cir.1975), *cert. denied*, 424 U.S. 976, 96 S.Ct. 1481, 47 L.Ed.2d 746 (1976). The orders or instructions were offered to show that they occurred rather than to prove the truth of something asserted. *See United States v. Alvarez*, 584 F.2d 694, 697–98 (5th Cir. 1978).

■ Ruffalo's testimony that Civella instructed defendant and Ruffalo to frighten Anderson and that they carried out those instructions established the existence of a conspiracy to assault Anderson for the purposes of admitting statements under Fed. R.Evid. 801(d)(2)(E). *See United States v. Andrews*, 585 F.2d at 966. Additionally, Ruffalo testified that Civella was present at several meetings with Ruffalo and Shepherd, that Ruffalo and Shepherd reported periodically to Civella to give progress reports, and that Civella was visibly pleased when informed the bombing was successful. Other circumstantial evidence supports the court's conclusion that Civella conspired with Ruffalo and Shepherd. Thus, statements that Civella made during the course of and in furtherance of that conspiracy were properly admitted under Fed.R.Evid. 801(d)(2)(E).

■ Defendant also contends that the admission of Civella's statements violated his rights under the confrontation clause. We note first that defendant did not raise this objection at trial and that ordinarily a party may not raise a confrontation clause objection for the first time on appeal. *Nolan v. United States*, 423 F.2d 1031, 1041 (10th Cir.1969), *cert.·denied*, 400 U.S. 848, 91 S.Ct. 47, 27 L.Ed.2d 85 (1970). Also, defendant does not specify to which of Civella's statements he objects. As we have noted, the most incriminating statements were Civella's instructions, which present neither a hearsay problem nor a confrontation clause problem. None of Civella's other statements directly implicated defendant in the offense charged. Since the statements were not devastating to the defense and the jury had ample opportunity to evaluate Ruffalo's credibility, admitting them under Fed.R.Evid. 801(d)(2)(E) did not deprive defendant of his rights under the confrontation clause. *See United States v. Roberts*, 583 F.2d 1173, 1176–77 (10th Cir. 1978), *cert. denied*, 439 U.S. 1080, 99 S.Ct. 862, 59 L.Ed.2d 49 (1979); *see also United States v. McManaman*, 606 F.2d 919, 926–27 (10th Cir.1979).

### B

Before sentencing, defendant filed a motion requesting that certain allegations be

stricken from the pre-sentence report. At the sentencing hearing Duane Nichols, a federal agent, testified that Michael Ruffalo and Barbara Holder, defendant's former wife, had stated that defendant had committed various criminal acts. The government showed no prior convictions and acknowledged that defendant had been acquitted of one of the acts. At the close of the hearing the trial court struck from the pre-sentence report allegations not supported by Nichols' or Holder's statement or other evidence at the hearing and stated that it would consider the other allegations because they were supported by some evidence. The court gave defendant the maximum sentence on each count, five years on the conspiracy count and ten years on the transportation count, with the sentences to run concurrently. Apparently defendant's complaint on appeal is that the trial court denied him due process by relying on hearsay evidence that he committed illegal acts for which he was not arrested, indicted, or convicted.

▮ Under 18 U.S.C. § 3577 the trial court may consider a broad range of evidence in determining an appropriate sentence:

> "No limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence."

Section 3577 was enacted to permit the sentencing court to rely on information of alleged criminal activity for which the defendant had not been prosecuted. *Smith v. United States,* 551 F.2d 1193, 1196 (10th Cir.), *cert. denied,* 434 U.S. 830, 98 S.Ct. 113, 54 L.Ed.2d 90 (1977). Defendant points out, however, that this Court has stated that a defendant has a constitutional right to sentencing based on accurate information, citing *United States v. Jones,* 640 F.2d 284, 286 (10th Cir.1981). *Jones* stands for the proposition that a defendant has the right to rebut or explain allegations made in a sentencing proceeding, not that the

government must prove the allegations beyond a reasonable doubt. *See United States v. Papajohn,* 701 F.2d 760, 763 (8th Cir.1983); *United States v. Aguero-Segovia,* 622 F.2d 131, 132 (5th Cir.1980) (per curiam). Also, the trial court may properly consider uncorroborated hearsay evidence that the defendant has had an opportunity to rebut or explain. *United States v. Papajohn,* 701 F.2d at 763. We find no error in the sentencing proceeding.

REVERSED and REMANDED.